IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| R.K., individually and as parent and natural guardian of S.K.B., | : : : : | HON. JEROME B. SIMANDLE |
| | : | Civil No. 07-5918 (JBS) |
| Plaintiffs, | : : | |
| v. | : : | **OPINION** |
| Y.A.L.E. SCHOOLS, INC., et al., | : : : | |
| Defendants. | : : | |

APPEARANCES:

Joel Wayne Garber, Esq.
GARBER LAW, PC
The Greens of Laurel Oak
1200 Laurel Oak Road
Suite 104
Voorhees , NJ 08043
     Attorney for Plaintiffs R.K. and S.K.B.

Christopher J. O'Connell, Esq.
SWEENEY & SHEEHAN, PC
Sentry Office Plaza
216 Haddon Avenue
Suite 500
Westmont, NJ 08108
     Attorney for Defendants Y.A.L.E. Schools, Inc., Karen Carr,
     Edward Vonderschmidt, Dennis Morgan, Karen Huber, Anna
     Bouvier, and Ernest Laux

Richard L. Goldstein, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PA
Woodland Falls Corporate Park
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002
     Attorney for Defendants Medford Township Board of Education,
     Mark Gelardo, Joseph Del Rossi, and Mary Maley

**SIMANDLE,** District Judge:

## I.   INTRODUCTION

Plaintiff R.K., individually and on behalf of her minor son, S.K.B., filed this action against the Medford Township Board of Education (the "Board"), a corporation called Y.A.L.E. Schools, Inc., and numerous employees of each entity.  At the time the events underlying this litigation occurred, S.K.B., who suffers from multiple disabilities, was enrolled at a private school operated by Y.A.L.E. Schools, Inc., pursuant to his individualized education program ("IEP") in the Medford Township school district.  According to the Complaint, after R.K. complained to Defendants about her son's treatment at the Y.A.L.E. School and announced her intention to file a complaint with the United States Department of Education ("USDOE"), Defendants retaliated against Plaintiffs by filing a false and unfounded report with the New Jersey Division of Youth and Family Services ("DYFS") alleging that R.K. had sexually abused S.K.B., and by filing a false truancy complaint against R.K. with the Medford Township Police Department.

Presently before the Court are the Medford Defendants' and the Y.A.L.E. Defendants' motions to dismiss [Docket Items 8 and 24].  For the reasons now explained, the Court will grant in part and deny in part Defendants' motions, as set forth herein.

## II.   BACKGROUND

### A.   Facts

The facts underlying Plaintiffs' claims, as alleged in the Complaint, are as follows.[1]  Plaintiff R.K. is the mother of S.K.B., a child who suffers from Asperger's syndrome, attention deficit hyperactivity disorder, and posttraumatic stress disorder.  (Compl. ¶ 15.)  In 2006, pursuant to his IEP[2] and through an agreement between the Board and Y.A.L.E. Schools, Inc., S.K.B. attended the Y.A.L.E. School in Cherry Hill, New Jersey.  (Id. at ¶¶ 3, 15.)  On February 28, 2006, the principal of the Y.A.L.E. School, Defendant Morgan, "improperly employed a face[-]down, take[-]down restraint" upon S.K.B., a use of force which Plaintiffs allege ran contrary to S.K.B.'s IEP, his doctors' recommendations, and the school's own policies and procedures.  (Id. at ¶ 15.)

Following this allegedly inappropriate use of force upon

---

[1]  As the Court explains, infra, Defendants in their motions to dismiss ask the Court to look beyond the face of the Complaint and consider evidence submitted in support of the motions.  The Court agrees with Plaintiffs that such evidence is beyond the scope of its review under Rule 12(b)(6), Fed. R. Civ. P., and does not consider Defendants' evidence herein.

[2]  An IEP is "[t]he primary mechanism for delivering a free appropriate education . . . [to a] child classified as disabled" under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.  Susan N. v. Wilson School Dist., 70 F.3d 751, 756 (3d Cir. 1995).  "An IEP consists of, inter alia, a specific statement of a student's present abilities, goals for improvement, services designed to meet those goals, and a timetable for reaching the goals via the services."  Id.

S.K.B., R.K. complained to the individually named Medford and Y.A.L.E. Defendants.[3]  (Id. at ¶ 16.)  According to Plaintiffs, the school employees' response to R.K.'s complaint was to inform R.K. that she would need to find an alternative school placement for S.K.B.  (Id.)  In addition, Plaintiffs allege that the school's employees continued to mistreat S.K.B. after R.K. complained; such alleged mistreatment, according to the Complaint, included threatening S.K.B. that school officials would "call the police on him," using improper physical restraints upon another child in front of S.K.B. in order to frighten him, and ultimately suspending S.K.B. when he refused to accompany Defendant Morgan to his office out of fear that he would be "unjustifiably restrained" again.  (Id.)

R.K. took two steps in response to this perceived mistreatment.  First, on March 9, 2006, she contacted Defendant Gelardo, an employee of the Medford Township Board of Education, and informed him that she believed that her son's civil rights were being violated, and stated that she intended to file a complaint with the USDOE's Office for Civil Rights.  (Id. at ¶ 17.)  R.K. followed through on her statement to Defendant Gelardo on May 22, 2006, when she filed a civil rights complaint.  (Id.)

---

[3]  The individual Medford Defendants are Mark Gelardo, Joseph Del Rossi, and Mary Maley.  (Compl ¶¶ 11-13.)  The individual Y.A.L.E. Defendants are Karen Carr, Edward Vonderschmidt, Dennis Morgan, Karen Huber, Anna Bouvier, and Ernest Laux.  (Id. at ¶¶ 4-10.)

Second, R.K. informed the Medford and Y.A.L.E. Defendants that she "could not keep her son in such a hostile environment," requested that the Board find a different school placement for S.K.B., and advised Defendants that if the situation was not resolved, she would not be able to send S.K.B. to the Y.A.L.E. School out of concern for his safety.  (Id. at ¶ 18.)  R.K. subsequently "revoked consent for the placement of her son at the Y.A.L.E. School and requested school district home instruction and related services pending appropriate alternative school placement."  (Id. at ¶ 19.)

The Complaint alleges that, in response to R.K.'s announced intent to file a civil rights complaint against Defendants with the USDOE, Defendants took various steps to retaliate against Plaintiffs.  First and most critically, Plaintiffs allege that the individual Defendants conspired to make a "false and malicious complaint of sexual abuse" perpetrated by R.K. against S.K.B. to DYFS.  (Id. at ¶ 20.)  According to Plaintiffs, in a complaint submitted to DYFS on March 17, 2006, Defendants "maliciously fabricated events and exaggerated otherwise innocent events" between R.K. and S.K.B. to invent a false account of an inappropriate sexual relationship between R.K. and S.B.K. in order to retaliate against R.K. for threatening to initiate a civil rights complaint.  (Id. at Count I, ¶ 2.)  DYFS agents, in turn, made an unannounced visit to Plaintiffs' home, where they

determined that the allegations against R.K. were "wholly lacking in merit and summarily closed the file." (Id. at ¶ 21.)

Subsequently, R.K. filed an application for "emergency due process relief" with the Department of Education's Office of Administrative Law in order to secure a new school placement for S.K.B. (Id. at ¶ 22.) To retaliate against R.K. for filing this application, Defendant Del Rossi allegedly filed a false truancy complaint against R.K. and S.K.B. with the Medford Township Police Department. (Id. at ¶ 23.) This complaint was ultimately dismissed after the court found that probable cause did not exist. (Id.) As a result of Defendants' alleged acts of retaliation, Plaintiffs claim that they have suffered severe emotional distress, including "depression, malaise, nightmares, [and] intrusive thoughts." (Id. at Count V, ¶ 3.)

**B.   Procedural History**

Plaintiffs filed this action on October 30, 2007 in the Superior Court of New Jersey, Camden County. The Complaint asserts counts of defamation (Count I), harassment (Count II), false light (Count III), negligence (Count IV), intentional infliction of emotional distress (Count V), civil conspiracy (Count VI), and retaliation for the exercise of First Amendment rights (Count VII). The Medford Defendants, who were served with the summons and complaint on November 19, 2007, timely removed the matter to this Court, pursuant to 28 U.S.C. § 1446(b), on

December 12, 2007 [Docket Item 1].  The Medford Defendants and
Y.A.L.E. Defendants subsequently filed the motions to dismiss
presently before the Court [Docket Items 8 and 24], to the merits
of which the Court now turns.  This Court has federal question
jurisdiction, pursuant to 28 U.S.C. § 1331, over Plaintiffs'
First Amendment claim and supplemental jurisdiction under 28
U.S.C. § 1367(a) as to Plaintiffs' related claims arising under
New Jersey law.

## III. DISCUSSION

### A.    Standard of Review

On a Rule 12(b)(6) motion to dismiss for failure to state a
claim upon which relief may be granted, the Court must "'accept
all factual allegations as true, construe the complaint in the
light most favorable to the plaintiff, and determine whether,
under any reasonable reading of the complaint, the plaintiff may
be entitled to relief.'"  Phillips v. County of Allegheny, 515
F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings
Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

> While Rule 12(b)(6) does not permit dismissal of a well-
> pleaded complaint simply because "it strikes a savvy
> judge that actual proof of those facts is improbable,"
> the "[f]actual allegations must be enough to raise a
> right to relief above the speculative level."

Phillips, 515 F.3d at 234.  "To survive a motion to dismiss, a
civil plaintiff must allege facts that 'raise a right to relief
above the speculative level on the assumption that the

7

allegations in the complaint are true (even if doubtful in fact).'" <u>Victaulic Co. v. Tieman</u>, 499 F.3d 227, 234 (3d Cir. 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, --- U.S. ----, 127 S. Ct. 1955, 1965 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, --- U.S. ----, 127 S. Ct. at 1964-65 (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

> "[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. [<u>Twombly</u>, 127 S. Ct. at 1965 n.3.] This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. <u>Id.</u>

<u>Phillips</u>, 515 F.3d at 234. "Generally, in ruling on a motion to dismiss, a district court relies [only] on the complaint, attached exhibits, and matters of public record."[4] <u>Sands v.</u>

----

[4] As the Court noted, <u>supra</u>, Defendants submitted multiple documents in support of their respective motions, including a document purporting to list certain policies and procedures adopted by Y.A.L.E. Schools, Inc., and a Notice of Tort Claim form Plaintiffs filed with the Medford Township Board of Education. These documents were not attached to the Complaint and are not matters of public record, and the Court does not rely on them in deciding the merits of the motions presently under consideration. <u>See</u> <u>Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.</u>, 998 F.2d 1192, 1197 (3d Cir. 1993) (noting that a public record for Rule 12(b)(6) purposes is one to which the

<u>McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007) (citation omitted).

**B.   First Amendment Retaliation Claim**

The Court addresses Defendants' arguments with respect to Plaintiffs' First Amendment retaliation claim at the outset, because it presents the only federal question in this lawsuit,[5] and because the individual Medford Defendants have raised a qualified immunity defense to this claim.[6]  In their retaliation claim, Plaintiffs allege that after R.K. announced her intent to exercise her rights under the IDEA by filing a complaint with the USDOE's Office for Civil Rights, and after R.K. filed a due process petition with the Office of Administrative Law, Defendants retaliated against Plaintiffs by maliciously filing an

---

"public ha[s] unqualified access").

While the Court recognizes that it could, upon notice to Plaintiffs and after affording Plaintiffs the opportunity to marshal evidence in opposition to Defendants' submissions, convert these motions to dismiss into motions for summary judgment, conversion is not appropriate where, as here, "little or no discovery has occurred."  <u>Kurdyla v. Pinkerton Sec.</u>, 197 F.R.D. 128, 131 (D.N.J. 2000).

[5]  Because supplemental jurisdiction over claims based on state law "should be declined where the federal claims are no longer viable," <u>Shaffer v. Albert Gallatin Area Sch. Dist.</u>, 730 F.2d 910, 912 (3d Cir. 1984), the Court would be compelled to remand this matter if it granted Defendants' motions to dismiss the federal claim.  As the Court explains, <u>infra</u>, Defendants' motions to dismiss this claim will be denied, making the Court's exercise of jurisdiction over Plaintiffs' state law claims appropriate at this time.

[6]  In light of "the importance of resolving immunity questions at the earliest possible stage in litigation," the Court addresses the issue of qualified immunity at the outset. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).

erroneous report with DYFS accusing R.K. of sexually abusing S.K.B., and by filing a false truancy complaint against Plaintiffs with the Medford Township Police Department;[7] Plaintiffs allege that filing these false reports constituted official retaliation for R.K.'s exercise of her constitutional rights.

Defendants have moved to dismiss Plaintiffs' retaliation claim, arguing that Plaintiffs have failed to state a claim for which relief may be granted.  In addition, the individual Medford Defendants argue that they are entitled to qualified immunity from Plaintiffs' retaliation claim.  As the following discussion makes clear, the Court is not persuaded by either argument.

     1.   <u>Qualified Immunity</u>

The Court first reviews the standard under which Defendants' qualified immunity defense is analyzed.  As the Court explains below, because the question of whether a plaintiff has adequately alleged a constitutional violation is subsumed within the immunity analysis, <u>see</u> <u>Thomas v. Ferguson</u>, 361 F. Supp. 2d 435, 442 n.7 (D.N.J. 2004), the following discussion accounts both for whether Plaintiffs have stated an actionable constitutional claim and whether the individual Medford Defendants are immune from

---

[7]  According to the Complaint, all of the Defendants participated in filing the false DYFS report, while only Defendant Del Rossi is alleged to have filed the truancy complaint.  (Compl. ¶ 23.)

10

suit.

As an "accommodation of competing values," qualified immunity strikes a balance by permitting a plaintiff to recover for constitutional violations where the governmental officer was "plainly incompetent or . . . knowingly violate[d] the law," while immunizing a defendant who "made a reasonable mistake about the legal constraints on his actions." Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007) (internal quotations and citations omitted). In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court described the two-step inquiry courts undertake in determining whether a governmental officer is entitled to qualified immunity. First, the Court must address whether "the officer's conduct violated a constitutional right." Id. at 201. As the Court of Appeals noted in Curley, the first step of the analysis is "not a question of immunity at all, but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity." Curley, 499 F.3d at 207. If in this first step the Court finds that there was no constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

"If, and only if, the court finds a violation of a constitutional right, the court moves to the second step of the analysis and asks whether immunity should nevertheless shield the

officer from liability." <u>Curley</u>, 499 F.3d at 207 (quoting <u>Scott v. Harris</u>, --- U.S. ----, 127 S. Ct. 1769, 1774 (2007)).  In the second step of the analysis, the Court addresses "whether the right that was violated was clearly established, or, in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  <u>Id.</u> (quoting <u>Saucier</u>, 533 U.S. at 202).

    2.  <u>Analysis</u>

The Court finds, first, that Plaintiffs have adequately pled an actionable First Amendment retaliation claim.  To state a retaliation claim under the First Amendment, Plaintiffs must allege "(1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action."[8]  <u>Lauren W. ex rel. Jean W. v.</u>

_____

[8]  As a threshold requirement, "a suit under § 1983 requires the wrongdoers to have violated federal rights of the plaintiff . . . while acting under color of state law." <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995).  The actions of non-state actors, like the Y.A.L.E. Defendants, may be taken under color of state law under certain circumstances.  The fact-specific color-of-state-law analysis accounts for such factors as "the extent to which the actor relies on governmental assistance and benefits; whether the actor is performing a traditional governmental function; and whether the injury caused is aggravated in a unique way by the incidents of governmental authority." <u>Edmonson v. Leesville Concrete Co.</u>, 500 U.S. 614, 621-22 (1991).

The Y.A.L.E. Defendants do not appear to contest that they acted under color of state law.  At this stage of the litigation,

Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted).

The "protected activity" referenced in the first prong is not

limited to speech, but has also been held to encompass a person's

First Amendment right to petition the government for grievances.

See, e.g., id. at 267 n.7; Thomas v. Independence Tp., 463 F.3d

285, 296 (3d Cir. 2006); Anderson v. Davila, 125 F.3d 148, 161-62

(3d Cir. 1997).

Applying this standard to the Complaint in this case, the

Court finds that Plaintiffs have stated a valid First Amendment

retaliation claim.  First, R.K. engaged in activity protected by

the First Amendment's Petition Clause when she announced her

intent to file a complaint with the USDOE's Office for Civil

Rights, actually filed the complaint, and initiated due process

proceedings with the Office of Administrative Law as authorized

by the IDEA.  See Hesling v. Avon Grove School Dist., 428 F.

Supp. 2d 262, 270 (E.D. Pa. 2006) (plaintiff's "invocation of

IDEA due process proceedings for her children, if not her legal

advocacy more generally, constituted a protected activity"); see

also Lauren W., 480 F.3d at 267 n.7; Bradley v. Pittsburgh Bd. of

Educ., 913 F.2d 1064, 1076 (3d Cir. 1990) (indicating that

engaging in proceedings before administrative tribunal falls

---

without the benefit of briefing from the parties, the Court will
assume without deciding that the Y.A.L.E. Defendants' actions
were taken under color of state law.  The Court notes, however,
that Plaintiffs' pleading on the issue of whether the Y.A.L.E.
Defendants' conduct constituted state action is thin at best.

within the ambit of Petition Clause protection).

Second, the Court cannot conclude, as a matter of law, that Defendants' allegedly retaliatory actions were not "sufficient to deter a person of ordinary firmness from exercising his or her [First Amendment] rights." Lauren W., 480 F.3d at 267; cf. Crawford-El v. Britton, 523 U.S. 574, 589 n.10 (1998) ("The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right."). The allegedly retaliatory actions at issue here, which the Court must construe in Plaintiffs' favor on a motion to dismiss, consist of fabricating a false and inflammatory tale about Plaintiffs concerning R.K.'s sexual abuse of S.K.B., maliciously filing a DYFS complaint against R.K. based on this fictitious abuse, and filing a fraudulent truancy complaint against Plaintiffs with the Medford Township Police Department. Initiating such baseless proceedings based on fabricated ethical and legal breaches by R.K. could deter a person of ordinary firmness from availing herself of her First Amendment rights. See Thomas, 463 F.3d at 296 (noting that "it is generally a question of fact whether a retaliatory campaign of harassment has reached the threshold of actionability under § 1983") (citation omitted).

Finally, Plaintiffs have alleged "that there was a causal connection between the protected activity and the retaliatory action." Lauren W., 480 F.3d at 267. At this stage in the

14

litigation, at which the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff[s]," Phillips, 515 F.3d at 231 (citation omitted), Plaintiffs' allegation that the Defendants' conduct was initiated maliciously and specifically to retaliate against R.K. for engaging in constitutionally protected activity is sufficient to satisfy the causal connection requirement.[9] Under the first prong of the qualified immunity standard, then, the Court concludes that Plaintiffs have adequately alleged that Defendants violated R.K.'s First Amendment rights.[10]

The second question under the qualified immunity analysis – "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," Saucier, 533 U.S. at 202 – must likewise be answered in the affirmative at this stage of the litigation.  While Defendants argue strenuously that their legal obligation to report cases of suspected child

---

[9]  Of course, upon summary judgment, should Defendants adduce evidence sufficient to establish that they had a reasonable basis to believe that such sexual abuse was taking place (even if their suspicions were ultimately incorrect), and that they initiated the proceedings in question in good faith rather than out of retaliation, then Plaintiffs would be unable to sustain their First Amendment claim.  Such a determination cannot be made at the motion to dismiss stage, at which the Court must construe the Complaint in the light most favorable to Plaintiffs.

[10]  This finding likewise indicates that Defendants' motions to dismiss Plaintiffs' section 1983 claim for failure to state a claim must be denied.

abuse to DYFS insulates them from liability here,[11] Plaintiffs have alleged that Defendants contacted DYFS not in good faith, but with malicious and retaliatory intent, and that the report to DYFS was based on a fabricated account of sexual abuse.  The precedent reviewed above concerning First Amendment retaliation claims indicates unmistakably that a reasonable governmental officer would understand that maliciously filing fraudulent and inflammatory complaints with DYFS and the police department to retaliate against a parent for exercising her rights under the IDEA runs afoul of the First Amendment.  See, e.g., Thomas, 463 F.3d at 296; Anderson, 125 F.3d at 161-62.

The Medford Defendants may renew their qualified immunity defense upon a motion for summary judgment, at which the Court may look beyond the pleadings to the undisputed facts in the case, but at this stage, their motion to dismiss Plaintiffs' First Amendment claim must be denied without prejudice.

---

[11]  Under N.J.S.A. 9:6-8.10, "[a]ny person having reasonable cause to believe that a child has been subjected to child abuse or acts of child abuse shall report the same immediately to the Division of Youth and Family Services."  A person "acting pursuant to this act in the making of a report under this act shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed."  N.J.S.A. 9:6-8.13. This provision "affords a qualified immunity by protecting those who report in good faith."  F.A. by P.A. v. W.J.F., 280 N.J. Super. 570, 580 (App. Div. 1995).  Plaintiffs' allegations, which must be credited at this stage, are precisely that Defendants did not report in good faith.  As New Jersey courts have recognized, such a qualified immunity may be decided at the summary judgment stage more easily than at the motion to dismiss stage.  Id. at 581.

**C.**   **Tort Claims Act**

In support of their motions to dismiss, the Medford and Y.A.L.E. Defendants invoke various provisions of the New Jersey Tort Claims Act, including the Act's provision of immunity for good faith law enforcement, N.J.S.A. 59:3-3; for the institution of administrative proceedings, N.J.S.A. 59:3-8; and for misrepresenting matters when acting in the scope of public employment, N.J.S.A. 59:3-10.  In addition, Defendants argue with respect to Plaintiffs' intentional infliction of emotional distress claim that Plaintiff has failed to satisfy the Tort Claims Act's "verbal threshold," which "bars recovery for pain and suffering based on subjective evidence or insubstantial injuries."  Ramirez v. United States, 998 F. Supp. 425, 437 (D.N.J. 1998).

For the following reasons, the Court holds that the individual Medford Defendants are immune from Plaintiffs' negligence claim, and will thus dismiss this claim as to those Defendants.  Additionally, the Court finds that the Board is immune from Plaintiffs' defamation, false light, intentional infliction of emotional distress, and civil conspiracy claims, and to the extent that Plaintiffs assert those claims against the Board, they will be dismissed.  The remainder of Defendants' motions to dismiss Plaintiffs' state law claims on the basis of Tort Claims Act immunity will be denied.

17

1.   <u>Medford Defendants</u>

    a.   <u>Tort Claims Act Immunity – Individual</u>
        <u>Defendants</u>

"The TCA was enacted with the purpose of limiting a public entity's or a public employee's liability in certain situations." <u>Davis v. Township of Paulsboro</u>, 371 F. Supp. 2d 611, 617 (D.N.J. 2005).  Among those situations, as the individual Medford Defendants argue, are instances in which a public employee "acts in good faith in the execution or enforcement of any law," N.J.S.A. 59:3-3; "institut[es] or prosecut[es] any judicial or administrative proceeding within the scope of his employment," N.J.S.A. 59:3-8; or causes an injury through misrepresentation while acting within the scope of his employment.  N.J.S.A. 59:3-10.

As Plaintiffs argue, however, each of these immunity provisions is subject to the exception contained in N.J.S.A. 59:3-14, which provides that "[n]othing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct."  As the Court explained in detail in its discussion of the Medford Defendants' asserted qualified immunity defense, <u>supra</u>, Plaintiffs have alleged that Defendants acted maliciously in fabricating a fictitious account of R.K.'s sexual abuse of S.K.B.  The Court must credit these allegations at this stage of

the litigation.[12]   Phillips, 515 F.3d at 231.

Accordingly, the individual Medford Defendants' motion to dismiss Plaintiffs' defamation, false light, intentional infliction of emotional distress,[13] and civil conspiracy claims on Tort Claims Act immunity grounds will be denied.  As to Count IV of the Complaint, however, in which Plaintiffs allege that the individual Defendants failed to "exercise a reasonable level of care and properly insure that reasonable grounds existed to support the allegations concerning [Plaintiffs]," (Compl., Count IV, ¶ 2), the Court agrees with the Medford Defendants that they are entitled to immunity under N.J.S.A. 59:3-8, which provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment."  The Tort Claims Act's "actual malice" exception would not bar the individual Medford Defendants' section 59:3-8 immunity if they were merely

_____

[12]   See Notes 9 and 11, supra.

[13]   In addition to their intentional infliction of emotional distress claim, Plaintiffs assert a claim of "harassment" in Count II of the Complaint.  As Defendants argue, New Jersey law does not recognize a cause of action based on harassment, but instead treats claims based on harassment as intentional infliction of emotional distress claims.  See, e.g., Aly v. Garcia, 333 N.J. Super. 195, 203-04 (App. Div. 2000).  Plaintiffs appear to acknowledge as much, conceding that their claim for harassment is "subsumed by the other causes of action."  (Pls.' Opp'n Br. at 18.)  The Court will accordingly dismiss Count II of the Complaint, as it is redundant of Plaintiffs' intentional infliction of emotional distress claim in Count V.

negligent in initiating the proceedings alleged in the Complaint. The Court will thus grant the individual Medford Defendants' motion to dismiss Plaintiffs' negligence claim.

     b.   <u>Tort Claims Act Immunity – Board of Education</u>

As to those claims that are saved by section 59:3-14's "actual malice" exception for the individual Medford Defendants – Plaintiffs' defamation, false light, intentional infliction of emotional distress, and civil conspiracy claims – the Board argues that it is immune from suit. The Court agrees. Under N.J.S.A. 59:2-10, "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." The Court recognized, <u>supra</u>, that Plaintiffs' defamation, false light, intentional infliction of emotional distress, and civil conspiracy claims are all premised upon allegations that the individual Defendants' conduct was "evil, mean-spirited, [and] malicious." (Compl., Count VI, ¶ 6.) The Court will accordingly grant the Board's motion to dismiss those claims asserted against the Board in Counts I, III, V, and VI, which are all premised upon the individual Defendants' malicious conduct.[14]

-------------------------------------------------------------------

    [14] Moreover, because under the Tort Claims Act "[a] public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable," N.J.S.A. 59:2-2(b), and because the individual Medford Defendants are immune from Plaintiffs' negligence claims, the Court will likewise dismiss Count IV against the Board. <u>See</u> Comment to N.J.S.A. 59:2-2(b) ("Subsection (b) is intended to

c.   <u>Verbal Threshold</u>

The individual Medford Defendants likewise invoke N.J.S.A. 59:9-2(d), known as the Tort Claims Act's "verbal threshold," in arguing that Plaintiffs' claim for intentional infliction of emotional distress must be dismissed.  Section 59:9-2(d) provides:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

N.J.S.A. 59:9-2(d).  According to the individual Medford Defendants, while permanent psychological injuries may "constitute[] a 'permanent loss of a bodily function' within the meaning of N.J.S.A. 59:9-2(d)," <u>Collins v. Union County Jail</u>, 150 N.J. 407, 420 (1997), Plaintiffs' pleadings fail to demonstrate that either Plaintiff suffered such a permanent loss or incurred medical expenses in excess of $3,600.00.

The Court will deny the individual Medford Defendants' motion to dismiss Plaintiffs' intentional infliction of emotional distress claim.  "Under the Tort Claims Act, the burden is on the public entity [or employee] to plead and prove its immunity." <u>Ciambrone v. State Dept. of Transp.</u>, 233 N.J. Super. 101, 105

_____

reduce the complexity of this act by providing that generally, entity liability tracks employee liability.").

(App. Div. 1989).  With respect to affirmative defenses like the Tort Claims Act's verbal threshold, while "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense appears on its face," Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) (citation omitted), dismissal is only appropriate where "plaintiff's own allegations show that a defense exists that legally defeats the claim for relief."  5B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1357 (3d ed. 2001).  In light of Plaintiffs' claims that they suffered extreme depression as a result of Defendants' conduct, the Court cannot conclude that they have not suffered a permanent loss or incurred medical expenses in excess of $3,600.00.  Of course, if, upon a later motion for summary judgment, Plaintiffs fail to adduce evidence of a permanent injury and medical expenses exceeding $3,600.00, Plaintiffs' claim for pain and suffering damages will be dismissed as to the Medford Defendants.  At this stage of the litigation, however, dismissal of Plaintiffs' intentional infliction of emotional distress claim pursuant to N.J.S.A. 59:9-2(d) is not called for.[15]

---

[15]    Nor can the Court find, as Defendants argue, that Plaintiffs have failed to state a claim for intentional infliction of emotional distress.

To prove a claim of intentional infliction of emotional distress, a plaintiff must prove: (1) that the actor intended to inflict emotional distress or that he knew or

2.   <u>Y.A.L.E. Defendants</u>

The Court finds that the Y.A.L.E. Defendants have not demonstrated that they are entitled to invoke the protections of the Tort Claims Act.  The Tort Claims Act defines "employee" as "an officer, employee, or servant, whether or not compensated or part-time, who is authorized to perform any act or service; provided, however, that the term does not include an independent contractor."  N.J.S.A. 59:1-3.  Notwithstanding this express exclusion of independent contractors from Tort Claims Act immunity, the New Jersey Supreme Court has recognized that "independent contractors . . . do, under well-recognized principles, share to a limited extent the immunity of public entities with whom they contract."  <u>Vanchieri v. New Jersey Sports and Exposition Authority</u>, 104 N.J. 80, 85 (1986).  In particular, "[w]hen a public entity provides plans and specifications to an independent contractor, the public contractor will not be held liable for work performed in accordance with those plans and specifications."  <u>Id.</u> at 86.  The

―――――――――――――――

should have known that emotional distress was the likely result of his conduct; (2) that the conduct was "extreme and outrageous"; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

<u>Cole v. Laughrey Funeral Home</u>, 376 N.J. Super. 135, 146-47 (App. Div. 2005) (citation omitted).  Plaintiffs' pleadings address each of these elements and are plainly sufficient to state a claim.

Court certainly cannot, at this stage of the litigation, conclude that the Y.A.L.E. Defendants were merely implementing the Board's "plans and specifications" when they allegedly engaged in the conduct described in the Complaint.  Id.  The Y.A.L.E. Defendants' motion to dismiss based on the provisions of the Tort Claims Act will accordingly be denied.

   **D.   Defamation and False Light Claims**

   Defendants move to dismiss Plaintiff R.K.'s defamation and false light claims, arguing that these claims are barred by the applicable statute of limitations.  For the reasons explained below, the Court agrees, and will grant Defendants' motions to dismiss these claims.[16]  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) (noting that a court may, upon a motion to dismiss, dismiss a claim on statute of limitations grounds if the untimeliness of the claim is apparent on the face of the complaint).

   The statute of limitations applicable to defamation and false light claims in New Jersey is provided by N.J.S.A. 2A:14-3, which states that "[e]very action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander."  See Rumbauskas v. Cantor, 138

---

[16]  As the parties recognize, Plaintiff S.K.B., who also asserts defamation and false light claims, is a minor; under New Jersey law, the statute of limitations on his claims is tolled until he reaches the age of twenty-one.  See N.J.S.A. 2A:14-21.

N.J. 173, 183 (1994) (noting that false light claims "are subject to the limitations period for defamation claims, which is one year in New Jersey"); see also Botts v. The New York Times Co., No. 03-1582, 2003 WL 23162315, at *6 (D.N.J. Aug. 29, 2003) (same).  As has been widely recognized, the judicially created "discovery rule," which defers the accrual of certain causes of action until the plaintiff knows or should know that he has been injured, is inapplicable to N.J.S.A. 2A:14-3, under which the statute of limitations begins to run upon publication.  See, e.g., Lawrence v. Bauer Pub. & Printing Ltd., 78 N.J. 371, 371-72 (1979); Palestri v. Monogram Models, Inc., 875 F.2d 66, 70 (3d Cir. 1989); Martinez v. National Broadcasting Co., 877 F. Supp. 219, 232 (D.N.J. 1994).

The comments referenced in the Complaint that form the basis of Plaintiff R.K.'s defamation and false light claims were made on March 17, 2006 and March 28, 2006, (Compl. ¶¶ 20, 23), which means that the one-year statute of limitations on these claims expired in March 2007.  Plaintiffs filed this action on November 19, 2007, approximately seven months after the limitations period expired.  It is thus apparent that the Complaint herein "facially shows noncompliance with the limitations period" applicable to Plaintiffs' defamation and false light claims.  Oshiver, 38 F.3d at 1384 n.1.

Recognizing the evident untimeliness of these claims,

Plaintiff R.K. argues that Defendants should be equitably estopped from contesting the timeliness of her claims because "Plaintiff did not learn of the identities of the persons who promulgated the subject accusations until November 17, 2006 . . . [and] she filed a tort claims notice under the Tort Claims Act, which further delayed her filing of a civil complaint." (Pls.' Opp'n Br. at 11.) Though labeled by Plaintiffs as an argument asserting equitable estoppel, this argument is more properly characterized as an attempt to invoke the discovery rule, which, as the Court has explained, is inapplicable to claims subject to N.J.S.A. 2A:14-3's limitations period. See Lawrence, 78 N.J. at 371-72; Martinez, 877 F. Supp. at 232. As Defendants have noted, New Jersey courts have invoked the doctrine of equitable estoppel in the context of statute of limitations questions where "a defendant has lulled a plaintiff into a false sense of security by representing that a claim will be amicably settled without the necessity for litigation," or where "a defendant has failed to disclose information which he had a statutory duty to disclose, and such non-disclosure prevented a plaintiff from realizing that he possessed an actionable claim." Lawrence, 78 N.J. 376 (Pashman, J., concurring) (citing cases). Neither of these circumstances is present here: R.K. has not suggested that she was lulled into a false sense of security with promises of settlement, and no Defendant had a statutory to disclose the

26

individual Defendants' identities to Plaintiffs.

Because the untimeliness of Plaintiff R.K.'s defamation and false light claims is apparent on the face of the Complaint, and because Plaintiffs have not demonstrated that the limited circumstances warranting the application of equitable estoppel are present here, Defendants' motions to dismiss R.K.'s defamation and false light claims will be granted.  As the Court recognized, <u>supra</u>, Plaintiff S.K.B.'s claims are tolled pursuant to N.J.S.A. 2A:14-21, and are not subject to dismissal herein, to the extent S.K.B. alleges defamation from being called a truant.

### E.   Punitive Damages

Defendants argue that Plaintiffs' claim for punitive damages should be dismissed.  The Court agrees with the Medford Defendants that Plaintiffs' claim for punitive damages against the Board and against the individually named Medford Defendants in their official capacities must be dismissed.  The Tort Claims Act provides, in N.J.S.A. 59:9-2, that "[n]o punitive or exemplary damages shall be awarded against a public entity." Likewise, the Supreme Court has made clear that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981).  The Board's motion to dismiss any claim for punitive damages against it will accordingly be granted.

The remaining Defendants' motions to dismiss Plaintiffs'

claims for punitive damages will be denied.  First, as the Court explained in section III.C.2, <u>supra</u>, the Y.A.L.E. School has not, at this stage of the litigation, demonstrated that it is entitled to the Tort Claims Act's provision of immunity for public entities.  The Y.A.L.E. School is a private corporation, and, notwithstanding the Y.A.L.E. Defendants' repeated references to a contract with Medford that is not presently before the Court, the Court cannot conclude that the limited provision of derivative immunity under the Tort Claims Act, for a contractor whose conduct was required by its contract with the state, applies to the Y.A.L.E. Defendants.

Finally, the Court will deny the individual Medford Defendants' motion to dismiss Plaintiffs' claims for punitive damages.[17]  The Medford Defendants recognize that punitive damages may be imposed against defendants in their individual capacities under section 1983 in cases where the defendant has

_____

[17]  Defendants' motion to dismiss Plaintiffs' claim for civil conspiracy for failure to state a claim will likewise be denied.  "Civil conspiracy is not an independent cause of action," <u>Cafaro v. HMC</u>, No. No. 07-2793, 2008 WL 4224801, at *8 (D.N.J. Sept. 8, 2008), but is instead a means of "enabling the plaintiff to recover against all the defendants as joint tortfeasors." <u>Eli Lilly and Co. v. Roussel Corp.</u>, 23 F. Supp. 2d 460, 497 (D.N.J. 1998).  The viability of a civil conspiracy claim turns on an actionable "independent wrong." <u>Brown ex rel. Estate of Brown v. Philip Morris Inc.</u>, 228 F. Supp. 2d 506, 517 n.10 (D.N.J. 2002).  Plaintiffs' claims relating to such independent wrongs remain viable in this case, and Defendants' motions to dismiss the conspiracy claim in Count VI for failure to state a claim will be denied.

been found to have acted with "evil motive or intent," but argue, in effect, that they did not act with such evil intent here. <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983). As the Court has repeatedly noted, however, under Rule 12(b)(6), Fed. R. Civ. P., the Court must credit Plaintiffs' allegations as true and draw all inferences in their favor. The Court will deny the individual Medford Defendants' motion to dismiss Plaintiffs' claims for punitive damages.

## IV.   CONCLUSION

For the reasons explained above, the Court will dismiss Plaintiffs' harassment claim as redundant; deny Defendants' motions to dismiss Plaintiffs' First Amendment retaliation claim; grant Defendants' motions to dismiss Plaintiff R.K.'s defamation and false light claims against all Defendants; grant the individual Medford Defendants' motion to dismiss Plaintiffs' negligence claim; grant the Board's motion to dismiss Plaintiffs' intentional infliction of emotional distress and civil conspiracy claims; grant the Board's motion to dismiss Plaintiffs' claim for punitive damages; and deny Defendants' motions to dismiss Plaintiffs' claims for civil conspiracy. The accompanying Order will be entered.


<u>**October 30, 2008**</u>                     <u>  **s/ Jerome B. Simandle**    </u>
Date                                  JEROME B. SIMANDLE
                                      United States District Judge